IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JONATHAN DAKOTA JUSTICE PLAINTIFF

v. Civil No. 2:24-cv-02034-TLB-MEF

JAMES JACKSON;
JIMMY STEPHENS;
NICK McKITTRICK;
JEFF WOODS;
ED JOHNSON
(All of Johnson County Sheriff's Office) DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 43).

## I. BACKGROUND

Plaintiff filed his Complaint on March 12, 2024. (ECF No. 1). On April 22, 2024, the Court entered an Order directing Plaintiff to submit an Amended Complaint to address deficiencies in his Complaint. (ECF No. 9). Plaintiff submitted his Amended Complaint on May 14, 2024. (ECF No. 10).

Plaintiff raises two claims in his Amended Complaint. First, he alleges that he was subjected to excessive force during his arrest on October 15, 2021. (*Id*. at 4-5). He names Defendants Jackson and Johnson for this claim. (*Id*. at 4). Plaintiff alleges that both Defendants ordered him to exit the vehicle he was traveling in. "Due to the plaintiff's known corruption[1] of

[1] The Court will interpret this phrase to mean that Plaintiff believed that the sheriff and his deputies were corrupt.

the current sheriff and his deputies he fled on foot." (*Id*. at 4). Plaintiff alleges that he was subdued with tasers and then shocked 8-10 more times while he was face down in a thorn bush and pleading for mercy. (*Id*. at 5). Plaintiff alleges that Defendant Johnson witnessed this and congratulated Jackson for his actions. (*Id*.). Plaintiff alleges that the taser shocks caused him to urinate and defecate on himself. He also alleges that he was left with multiple lacerations and bruises all over his body. (*Id*.). Plaintiff proceeds against Defendants Jackson and Johnson in their official and individual capacities. (*Id*.). As the official capacity portion of the claim, Plaintiff alleges "[f]ailure to condone Deputy Jackson's actions. Instead, praised him and ignored the brutal assault on me." (*Id*.).

For his second claim, Plaintiff names Defendants McKittrick, Woods, and Stephens. (*Id*. at 6). Plaintiff alleges that he was transported to the Johnson County Detention Center on October 15, 2021, without being taken to the Emergency Room for further examination. (*Id*.). He states he repeatedly asked to speak to the Jail Administrator (McKittrick)[2] about the situation. He then requested to speak to the Sheriff (Stephens)[3] and his Chief Deputy (Wood).[4] During the months he was incarcerated in the Johnson County Detention Center, none of them ever came to speak with him. (*Id*.). Plaintiff alleges he was repeatedly harassed and even tased and dragged from his cell by Defendant McKittrick for not washing the walls of my cell as he demanded.[5] Plaintiff emphasizes that he was not the one who wrote on the walls. (*Id*.). Plaintiff proceeds against

[2] Plaintiff's deposition, ECF No. 45-7 at 7, 38.
[3] Plaintiff's deposition, ECF No. 45-7 at 7, 30.
[4] Plaintiff's deposition, ECF No. 45-7 at 7, 35. According to Defendant Wood's deposition, he was a Captain at the time. (ECF No. 45-3).
[5] In his deposition, Plaintiff states that the only harassment came from McKittrick. He states Stephens and Wood just ignored him. (ECF No. 45-7 at 38-39). He also testified he did not file any grievances about the harassment or tasing by McKittrick because he did not think it would do any good with McKittrick being the jail administrator. Plaintiff did not address the issue of McKittrick harassing or tasing him in his summary judgment response. Thus, Plaintiff's allegation that McKittrick harassed and tased him will not be considered further.

Defendants McKittrick, Woods, and Stephens in their official and individual capacities. (*Id.*). As his official capacity claim. Plaintiff states that: "Praising and encouraging wrongful acts of excessive force instead of holding the ones responsible for their actions which their oath of office demands that they do." (*Id.* at 7).

Plaintiff seeks compensatory, punitive, and other damages. (*Id.* at 9). He seeks compensatory damages in the amount of three million dollars. He notes loss of employment through law enforcement. He further states: "I am entitled to these things after my injurys [sic] were ignored and discredited after being wrongfully accused of charges and detained in an attempt to justify the wrongful malicious actions of the Defendants." (*Id.*).

Defendants filed their Motion for Summary Judgment on October 27, 2025. (ECF No. 43). Defendants argue that summary judgment in their favor is appropriate because Defendants Johnson and Jackson did not utilize excessive force against Plaintiff during the arrest. (ECF No. 44 at 4-5). They argue that Defendants Stephens, McKittrick, and Wood had no personal involvement in Plaintiff's vague allegations of deprivation of rights during incarceration, and he had sued them simply for being in charge. (*Id.* at 5-6). They argue there was no denial of medical care because Plaintiff was cleared by EMS at the scene of the arrest, which Plaintiff testified that he did not remember.[6] (*Id.* at 6-7). They further note that Plaintiff did not request medical care while he was incarcerated in the Johnson County Detention Center. (*Id.* at 7). They argue Plaintiff failed to exhaust his administrative remedies against Defendant McKittrick for purported excessive force and harassment. (*Id.* at 7-8). Finally, they argue Plaintiff has not identified or provided any proof of any unconstitutional county policy or custom, nor any evidence of a pattern of such, to support any official capacity claim. (*Id.* at 8-9).

[6] The Court notes that the Johnson body camera video shows Plaintiff being treated by EMS at the scene of the arrest. *See infra*, video notes.

Plaintiff submitted his Response on January 20, 2026. (ECF No. 52). Plaintiff provided a three-page statement where he lists points in the Jackson body camera video which he believes are indicative of excessive force. (*Id*. at 1-2). He addresses the denial of medical care claim by stating that: (1) he does not recall meaningful medical evaluation; (2) he was in pain and disoriented and physically incapacitated after multiple taser cycles; and (3) Plaintiff disputes that he knowingly declined or failed to request medical care. (*Id*. at 3). Plaintiff also provided a Separate Statement of Disputed Facts. These facts do not, however, correspond with the numbered paragraphs of Defendants' Statement of Undisputed Facts. (*Id*. at 4-6). Plaintiff does not refer to any exhibits other than the Jackson body camera video, and he did not attach any exhibits to his Response documents. Plaintiff was advised that the Court will not look through the entire case file to locate a document supporting his factual statements. (ECF No. 46). Further, Plaintiff's documents are not notarized or signed under the penalty of perjury.

**BODY CAMERA VIDEOS**

**Johnson Body Camera Video**

The video begins with Defendant Johnson stopping a vehicle on a deserted road at approximately 1:00 a.m.[7] There do not appear to be any buildings or lights nearby throughout the videos. There are dense woods and brush on either side of the road. The driver of the vehicle is a female, and she has a male passenger. The male passenger is the Plaintiff in this case. Johnson informs the driver that her license plates came back as unconfirmed for insurance. The times cited are the actual times on the video, not timestamps.

- 1:47 Plaintiff falsely identifies himself as Chris Phillips.

[7] The time is provided in later affidavits.

- 6:18 Johnson returns from his patrol car and informs Plaintiff that he is not getting a return for him with the information he was given.
- 7:12 Informs him that if he can't get him identified, they will be taking him to jail to figure it out. Tells him that he shouldn't be worried about a warrant, etc., can get it taken care of at the side of the road. Plaintiff insists he is Chris Phillips. A lengthy discussion and calls to dispatch ensue.
- 26:00 Defendant Jackson arrives on the scene. Discussion between the two indicates their belief that Plaintiff is hiding something, but they just don't know what it is.
- 27:52 Plaintiff is asked to step out of the car. He does so. He is wearing a mask and states he has COVID. He is told to face the vehicle and put hands on it. Plaintiff keeps trying to slide his hands down.
- 29:51 We're going to take you to the jail and fingerprint you. So we can ID you.
- 30:12 Plaintiff starts to put his hands behind his back for handcuffing and then takes off running. Jackson yells at Johnson to tase him. You can see a taser in the body camera screen but it is not clear if it was fired.[8] Plaintiff runs into heavy brush and woods at the side of the road. Jackson follows.
- 31:20 Johnson goes back to the stopped vehicle to secure the female driver. She identifies Plaintiff as JJ, Jonathan Justice.
- 32:44 Johnson gets in a patrol car and drives.
- 33:00 Stops the car and gets out. Jackson is standing off the side of the road and loudly commanding Plaintiff to put his hands behind his back.

[8] In his affidavit, Defendant Johnson confirmed that he fired the taser at Plaintiff but missed him. (ECF No. 45-2 at 2).

- 33:14 Plaintiff is yelling and moaning and laying face down on the ground. His arms are beside him, but not behind his back. Johnson reaches down to grasp his hands and handcuff him. He had to use another set of handcuffs. Plaintiff still insisted he was Chris Phillips, at which time they informed him that the female driver had "ratted him out." Plaintiff asked that they not arrest the female driver.
- 52:50 Found a 38 special and drugs in Plaintiff's backpack in the car.
- 56:25 Johnson and Jackson discuss that they must be improving. They note that the last time they arrested Plaintiff it took 5 guys to catch him in his own front yard. This time it was just 2 of them in the middle of nowhere.
- 1:14:34 Johnson tells Plaintiff to get to his feet and walk with him.
- 1:15:29 Johnson has Plaintiff sit in the car while they wait for EMS to arrive. Later discussion indicates that the dispatcher gave the incorrect address to EMS and the wrecker service.
- 1:19:45 EMS arrives and proceeds to work on Plaintiff. Plaintiff has blood on the right side of his face and apparent abrasions on his right arm. EMS asks for a multi-tool or pliers to remove the taser prongs. Got them out using a wire stripper.
- 1:24:14 – EMS continues to work on Plaintiff off-camera.
- 2:11:00 Johnson leaves the scene with the female driver in the back of his patrol car.

**Jackson Body Camera Video**

- Beginning of video: Jackson arrives and talks to Johnson. Sound is off until they approach the stopped vehicle to ask Plaintiff to step out of the vehicle. Plaintiff is wearing a mask. Plaintiff says he has COVID. Walks to the back of the stopped vehicle and faces it. Jackson tells him to get his hands out of his pockets.

- 1:47 Plaintiff continues to maintain that he is Chris Phillips. Jackson tells him he doesn't think he is Chris. Both officers are standing behind him.
- 3:06 We're going to take you to the jail and fingerprint you so we can identify you.
- 3:26 Plaintiff takes off running. Johnson is closer to him.
- 3:28 Jackson yells at Johnson to tase him.
- 3:37 A taser can be heard, but Plaintiff does not stop. He veers into the woods on the side of the road. Jackson follows.
- 3:48 Jackson fires the taser. Plaintiff bends down but then gets up and keeps running. Not clear if he was hit with the taser or if he tripped. He does not yell or scream. Jackson continues to chase him through the woods and onto the road.
- 4:17 Jackson yells "he is on the highway!" Orders Plaintiff to "get on the ground, NOW!"
- 4:32 Clear hit with the taser. Plaintiff falls and yells. Gets back up. Looks to be reaching for the prong on his left hip, buttock, or lower back. Taser starts to click again. Plaintiff is back down. Rolls to back and is facing Jackson. Starts to get back up facing Jackson.
- 4:40 Screen is obscured by the taser as Jackson appears to load a fresh taser cartridge. (Later in the video, Jackson states that the first taser shot "didn't stick all the way.").
- 4:44 Plaintiff is several feet away from Jackson and kneeling or partially standing with one arm on the ground. He is trying to keep moving forward. He falls to his knees and keeps moving forward away from Jackson, heading back into the woods.

- 4:47 Plaintiff is hit with another taser. It continues clicking as Plaintiff falls, yells, and rolls onto his back.
- 4:52 Plaintiff yells "Stop Please!" Jackson orders him to "get on your face, NOW!" No response. Taser clicks again. Plaintiff yells "Stop Please Stop!" Rolls over to his stomach, but his arms are still beneath him. Jackson orders him "arms to your side, NOW." Repeats the Order. Plaintiff says he can't move. Jackson repeats to order "Arms out to your side."
- 5:16 Jackson radios dispatch that the taser has been deployed.
- 5:21 Jackson repeats the Order – "arms out to your side, NOW."
- 5:25 Jackson repeats "NOW." Plaintiff states he is trying.
- 5:29 Plaintiff seems to be able to rise somewhat on his elbows and then is back down again.[9]
- 5:40 Jackson repeats the order – "arms out to your side, NOW."
- 5:41 Taser clicking again.
- 5:44 Plaintiff yells "Stop, Please, God, Stop." He rolls over to his side and then onto his back.
- 5:46 Jackson orders him to "Quit moving."
- 5:53 Jackson – "Roll over to your belly NOW."
- 5:57 Plaintiff states he can't.
- 5:59 Jackson – "Roll to your belly."
- 6:00 Plaintiff – "I'm trying."

---

[9] The Court notes that it is sometimes difficult to see exactly what Plaintiff is doing, because the light of the flashlight is so bright that it obscures the camera. At some points after the second taser hit, Plaintiff appears to be propping up on his arms/elbows. At other times he appears to be laying flat.

- 6:04 Plaintiff rolls to his belly.
- 6:05 Jackson – "arms behind your back."
- 6:06 Plaintiff raises himself to his knees, with his right hand on the ground and his left arm up. Jackson orders him "Don't Get up! Stop!" Taser clicking.
- 6:10 Plaintiff yells and is back down on the ground.
- 6:13 Jackson – "Arms behind your back."
- 6:14 Plaintiff – "I can't move."
- 6:17 Plaintiff asks "Why do you keep shocking me?"
- 6:18 Jackson – "Because you keep trying to get up." Plaintiff says he isn't. Plaintiff is below camera range at this point.
- 6:21 Jackson – "Hands behind your back."
- 6:28 Johnson arrives on the scene with handcuffs and bends down to Plaintiff. Plaintiff is lying face down with his arms to his sides, but *not* behind his back.
- 6:38 After an issue with the first set of handcuffs, Plaintiff is handcuffed with a second set.
- 7:43 Call to dispatch – one in custody, send EMS.
- 9:51 Jackson tells Johnson that he used 2 cartridges, but the first cartridge did not stick all the way.
- 9:59 Jackson tell Johnson that when I got to here, he tried to swing, so I went ahead and shot him again.
- 10:16 two abrasions are visible on Plaintiff right arm, one on his elbow.
- 17:08 Johnson tells Jackson to check Plaintiff carefully – he found a firearm.

- 29:33 The last time we tried to catch this guy it look 5 guys to catch him in his own front yard. Tonight it was two in the middle of nowhere. We're getting better.
- 33:11 Helped Plaintiff adjust himself to be more comfortable while waiting for EMS. Did so a couple of times.
- 1:56:47 Jackson and Plaintiff arrive at the jail. Plaintiff was laying on the back seat holding a can of water or soda. He was able to get up and walk away from the car without assistance. He had a white bandage wrapped around his right arm and there was no blood apparent on his face. Jackson asked the officer who met him to get Plaintiff some water.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

### A. Excessive Force Claim - Defendants Johnson and Jackson

The objective evidence in the summary judgment record contradicts Plaintiff's claim of excessive force during his arrest. The Fourth Amendment's objective reasonableness standard governs a claim that an officer used excessive force "in the course of making an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 388 (1980); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The test for assessing whether the violation of the right to be free from excessive force under the Fourth Amendment is "whether the amount of force used was objectively unreasonable under the particular circumstances." *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quotation marks omitted). The application of this standard requires careful attention to the facts and circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-397.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). To conduct an arrest, some degree of force is necessary. Therefore, the fact that force is used during

an arrest does not alone establish a Fourth-Amendment violation. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized…the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted).

Plaintiff accused both Defendant Johnson and Defendant Jackson of excessive force. Based on both the Johnson body camera video and Johnson's affidavit (ECF No. 45-2), Defendant Johnson fired a taser at him and missed. His next contact with Plaintiff was when Plaintiff was down and he handcuffed him. In his deposition, Plaintiff agreed that Johnson did not tase him or take him to the ground. Nothing in these facts supports a claim of excessive force.[10]

This leaves Defendant Jackson, who chased and tased Plaintiff. There is no dispute that Plaintiff was tased several times during his flight; six times by the Court's count after reviewing the Jackson video. Defendant Jackson's actions in tasing Plaintiff six times were not objectively unreasonable because Plaintiff was attempting to evade arrest by flight. He fled into the woods late at night, on a deserted road, after being clearly evasive as to his identity during a traffic stop. Plaintiff was in no way physically compliant until Defendant Johnson handcuffed him. After five taser shocks, he still attempted to get to his feet and run. Thus, it appears that Plaintiff lied to Jackson when he said he was unable to move, and Jackson correctly recognized that he was not physically incapacitated. Plaintiff did not comply with multiple orders to put his hands by his side until after the final taser shock; instead, he kept his hands under him, and at times seemed to be propping himself up on them. For his final attempt to flee, he used his arms to raise himself to his knees. At no time during the incident did he comply with orders to put his hands behind his back.

[10] Plaintiff testified that Johnson knew what happened. However, the video indicates that Defendant Johnson was not present for the chase through the woods and the tasing. He only arrived on the scene after Plaintiff was down and handcuffed him. Thus, no claim for failure to intervene can be inferred.

The circumstances of the arrest, combined with Plaintiff's behavior, raised concern for the safety of the officers. There is no dispute that the arrest occurred late at night on a deserted road flanked by heavy brush and woods. The location was described by Defendant Johnson and Jackson as being "in the middle of nowhere," and both EMS and the wrecker for the car were late in arriving due to confusion as to the address. There is no dispute that Plaintiff was repeatedly and obviously evasive as to his identity, and he fled when Defendant Johnson and Jackson were attempting to handcuff him by the vehicle. There is no dispute that Plaintiff ran into dense woods, out again on to the road, and then back into the woods.

There is no question of material fact as to whether Plaintiff was subjected to excessive force during his arrest, and Defendants Johnson and Jackson are entitled to summary judgment as a matter of law on this claim.

**B. Denial of Medical Care - Defendants McKittrick, Stephens and Wood**

Plaintiff cannot seem to make up his mind as to whether he is claiming denial of medical care at the scene of the arrest or once he was booked into the Johnson County Detention Center. In his Complaint, he states that he was not taken to the Emergency Room and names Defendants McKittrick, Wood, and Stephens. This would seem to imply that he is complaining that he was not taken to Emergency Room once he was booked into jail. In his Summary Judgment Response, however, Plaintiff states that he does not recall meaningful medical evaluation; and he was in pain and disoriented and physically incapacitated after multiple taser cycles. This would seem to imply that he is complaining that he did not receive medical care at the scene of the arrest. In his deposition, he testified that he did not remember EMS/EMT being at the scene of the arrest. This could imply he thought he did not receive any medical care at the scene. In either case, Plaintiff's denial of medical care is contradicted by the summary judgment evidence.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal

citations omitted). Despite this, issues of fact exist when there is a question of whether medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Regarding the objective first prong requirement, Plaintiff had taser prongs which needed to be removed, appeared to have two abrasions on his right arm, and there was some blood on the right side of his face. It is not clear if the blood on his face was from his arm or some other source.[11] The taser prongs meet the objective prong of the test. For the purposes of this summary

[11] In his deposition, Plaintiff stated he has high blood pressure. He did not mention this on the video, this was not mentioned in his Complaint. Further, grievance records provided by Defendants note that he asked for refills for blood pressure medication at later dates, but there were no requests to be taken to the ER immediately after his arrest.

judgment motion, the Court will also find that the arm and possible face abrasions will suffice as well.

Plaintiff's allegations, however, do not satisfy the second, subjective prong of the deliberate indifference test. EMS was called to the scene, and it was confirmed on video that the taser prongs were removed. Plaintiff was then treated off camera. When he arrived at the jail, the right side of his face was clean, and his right arm was wrapped in a white bandage. Plaintiff did not request to be taken to the ER on the video, and there is no evidence in the summary judgment record that he submitted a formal request to be taken to the ER when he was booked in. In his deposition, he was asked if he felt like he needed to go to the ER, and he stated he definitely needed to change his underwear. He did not testify that he asked to go to the ER or that he felt he needed to go to the ER. (ECF No. 45-7 at 29). He testified that he did not put in a medical request for his injuries to be cleaned at the jail. (ECF No. 45-7 at 44). Plaintiff has not alleged that he suffered any ill-effects by not being taken to the ER, and he has not produced any verifying medical evidence of any detriment to his health.

Plaintiff's claim that he was denied medical care, either at the scene of the arrest or shortly thereafter in the Johnson County Detention Center, is contradicted by the summary judgment evidence. Even if there had been some question about care, Defendants correctly argue that Plaintiff testified in his deposition that he only sued Defendants McKittrick, Stephens and Wood because they were "in charge." He does not allege that they were personally involved in any denial of medical care or other deprivation of rights. (ECF No. 44 at 6; 45-7 at 46-47). *See Monell v. Department of Soc. Servs.*, 436 U.S. 654, 694 (1978) (A claim of deprivation of a constitutional right cannot be based solely on a *respondeat superior* theory of liability.).

Thus, there is no question of material fact concerning Plaintiff's denial of medical care claim, and Defendants are entitled to summary judgment as a matter of law.

## IV. CONCLUSION

For the reasons discussed above, it is RECOMMENDED that Defendants' Motion for Summary Judgment (ECF No. 43) be GRANTED and Plaintiff's Amended Complaint (ECF No. 10) should be DISMISSED WITH PREJUDICE.

*Referral Status*: This case should not remain referred because all matters have been recommended for dismissal in this Report and Recommendation.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in a waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of July 2026.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE